First case for argument this morning is 161332, Advanced Ground Information v. Life360. Mr. Fabrikant, I have a hearing. Good morning, Your Honors. My name is Alfred Fabrikant and I represent the appellant. We're here on an order granting a fee award in a patent case. This is a case which was tried in the Southern District of Florida. And it's our position on this appeal that looking at octane fitness, looking at the standard, which I don't think any of us argue or dispute, that this is not an extraordinary case for many reasons. One of the arguments you make in your blue brief, which disturbs me, is that you say in sum, nine months after stating in open court this was not an exceptional case, the judge went ahead and found it was an exceptional case. And you cite to the joint appendix during the pretrial conference in which the judge said, I've got a few observations, and then said things judges say when they're trying to muscle parties to settle or whatever. And said, I don't see how this could be an exceptional case, though in terms of attorney's fees on the other side. So those probably won't happen. I haven't heard all the facts. But just looking at what I've seen so far, I don't see how those things could happen. Now, how the heck does that represent anything other than a district court judge thinking out loud? Your Honor, I agree with you completely. We're not the counsel who submitted the briefs. We were retained a month or two ago after the Kenyon firm ceased operations. And I agree with your comment. Okay, so there's a bunch of stuff in here, and you're going to agree with me on them. There may be. There may be. But we brought fresh eyes to this argument. We are obviously not responsible for the briefs. Okay, let me ask you about a fact then. The demand letter was sent on a particular day. And you know what day that was. It was the day that they announced the $50 million investment. And it was sent with a 72-hour deadline. Why was that? Your Honor, I only know what's in the record. I don't believe, and I believe the testimony in the record was that it was not tied to any particular event. There were other demand letters that went out to other parties. For different time periods. For different time periods. They were concerned that this particular defendant would file a declaratory judgment action. I think their concerns were, as it turned out, well-founded because there was a motion to transfer. More importantly, there was a retaliatory action brought very shortly after this action started, which went on for some 11 months and was ultimately dismissed with prejudice. And it was a retaliatory action. It was an action for tortious interference, for false marking, for interference with contract. And that action was in direct response to this action. Now one thing I think it's important for the court to understand, and we've all seen a lot of the cases that are being filed now, Aegis is not an NPE. Aegis is an operating company that has sold product for years, particularly to the United States government and first responders, after 9-11. The sole inventor of this company is a former United States Marine captain. He came up with this invention. He not only has the patents that were served in this lawsuit, he has three subsequently issued patents that have been granted by the patent office more recently. He has never brought a patent suit in his life. What is that all about? Are you trying to persuade us that the judge's reliance in some part on the fact that this was to obtain a settlement is wrong or shouldn't apply? Well, I think in considering the totality of the circumstances, this is not, and there are some facts like that, which could raise an eyebrow. But also you have to look at who the plaintiff is. This is not a plaintiff who has engaged in any prior litigation in patent cases. This is not a plaintiff who's ever extracted or extorted settlements from anyone. And I think taking in the context of everything that the record reflects about who this plaintiff is, it speaks to the issue of whether this was a coincidence, whether this was calculated, and we don't believe it was calculated. We believe that this was an honest company, an honest man who brought a lawsuit, who, by the way, hired a top law firm, who relied on that law firm because he had no experience with patent litigation. He relied on his counsel throughout the proceeding. So what do you want us to do? We've got a very deferential standard of review here, and so you're giving us one snippet and you're saying, well, this should have been interpreted more this way than this way. Yes, sir. Where does that leave us as an appellate court? Well, one error I think the district judge made, nowhere in his decision does it even mention or refer to the bad conduct of the defendants throughout that litigation. I'm sorry to interrupt, but the time is limited, so I just want to get to it. We understand that argument was made in the briefs. But the pushback for that is that this is extrajudicial conduct, and in Octane and in everything we've seen about attorney's fees, the reference is to litigation misconduct and not to this outside activity. And there's probably a very good reason for that, because if you start opening up, I mean, attorney fees cases have become extreme in some instances where there's more resources put into that than necessarily the merits case. So where does that leave us? I mean, do you acknowledge at least that you're asking us to look at a factor that is not one that's referenced in the cases that we're required to follow? Well, not exactly. I do think you cross the line when a party in a litigation writes counsel on the other side directly, buys websites in their name, gives out their personal phone numbers, gives out their personal email addresses, and then writes them and says, I will give you a graceful exit from the litigation if you stop this. Otherwise, I'm going to escalate this and even do worse things. That's in the record. I think when you do that, that is the kind of egregious conduct, Your Honor. And if it's not falling within Octane, then it surely falls within unclean hands. Does this court want to reward a defendant that engages in that kind of conduct against an adversary? Are there any cases that you can point to where the notion of unclean hands has introduced itself into the analysis of attorneys' fees? We did cite a case in our briefs with respect to unclean hands and how in a fee motion, the court has the ability in its discretion to deny fees that might otherwise be entitled if that party has engaged in conduct. And we've cited that case in our briefs. That's not an Octane Fitness case, but it's an attorney fee case. So because the district court has discretion to consider that, it's an abuse of discretion when he did not consider that? I believe to totally not consider it when the court did consider other factors with respect to the plaintiff, such as whether or not this was timed and calculated and other factors dealing with the plaintiff's behavior. For example, I found it extraordinary that the judge in his 13 lines addressed the substance of this litigation in this four-page decision that actually addressed the weakness or the strengths of this case, 13 lines. And he devoted one or two of those lines to the fact that plaintiff had sought injunctive relief in the complaint. It used to be that you were entitled to injunctive relief if you won a patent case. We now, of course, know that the law is different. But this was a real company, an operating company, that had every right to seek injunctive relief based on the balancing and all of the factors that are required. But to find that is one of the 13 lines of reasons to award attorney fees and yet at the same time to ignore the conduct of the defendant. So you've got a district court judge who's reviewing these facts. And I can't put myself inside the judge's head. But in essence, what you've got is something like the man with the eggshell skull that we learned in first year law school. You've got a 20, I think, 25-year-old defendant, president of this entity, who's a puppy. And who gets this letter and reacts in an hysterical and immature fashion. And the district court chose to just treat it like it was. It's a puppy. And this puppy is being swatted across the nose by a mature business person who should have known better. I mean, that's one way of looking at it. Your Honor, also in this case, this is a case, and that's why I'm asking the court to look at the totality when we consider whether or not this was an abuse of discretion. This is a case where summary judgment on the precise issues that are before this court, the precise issues of whether this was divided infringement. And I've read the record of everything that was before the district court judge. And I believe that the record reflects he clearly understood what the issue was. I'm going to interrupt you for a minute and go back to the unclean hands point. I presume that that was made to the district court below. That argument was made to the district court, right? That attorney fees are not appropriate because you could consider the other party's conduct. Now, that the district court then didn't specifically address it in his opinion, does that mean that he didn't consider it at all? Because we as an appellate court affirm judgments, not opinions, right? Yes, although, and we've cited the cases in our brief, the more reasoned that decision is, the more comment and reasoning and analysis that the district judge gives, the better that the federal circuit judges have to decide whether there's an abuse of discretion. I agree with you. When you set forth 13 lines with conclusions, there's one sentence which says a single party could not have performed these steps, even though on summary judgment, he found to the contrary. And that one discussion of why. Well, on that summary judgment, the judge says later that the court considered granting summary judgment in favor of life 360, but did not because of an argument that the claim methods debts were performed automatically as a result of sending an invitation to join the circle. And that proved to be false. Well, I disagree with that, Your Honor, that it was false. I agree that the court said that. But remember, the steps here that were at issue, providing, storing, displaying, and transmitting, none of those were construed, none of those was the district court asked to construe. They were basically given their plain and ordinary meaning, and they went to the jury on the issue of whether or not those steps had taken place by this administrative user. So that was a key to this entire summary judgment. Hang on a minute. Yes, sir. In response to life 360's motion for summary judgment, Aegis stated, quote, by following the link provided by the admin, the software and data is downloaded and stored on the invitee's phone automatically. And the district court denied the summary judgment motion by life 360 because of that statement. Aegis's own expert admitted later that any invited user is, I'm quoting again, free to decline or ignore the invitation. And that, quote, by accepting the invitation, you also have to do some things like agree to terms of service and so forth. So the prior statement simply wasn't true. Well, Your Honor, in the record on summary judgment, the judge specifically refers to expert report, to testimony of the deposition of two of life 360's witnesses, and to e-mails of life 360 users which make clear one of them recently installed life 360 on my Samsung aviator and both my son's phones. Whenever Zach deletes the app, Suzanne makes him download it again before he's allowed out. OK, that was evidence that the judge understood. The judge cited to this e-mail evidence that the judge understood that when an invitation is sent, there still had to be active steps taken to download and install the software. And I think at the time of the summary judgment, the district judge understood that. Now, perhaps by the end of the case, the judge wasn't that thrilled with the strength of the evidence that came in. But at the time of summary judgment, this issue was on the table. This issue was before him. He cited to the extensive record. He even pointed out an example where it's not automatic. So, yes, I agree with what I understand. Do you realize the ramifications of what you're saying kind of as a more global policy thing? My recollection is that we've actually had attorney's fees cases where the reverse happened. Where the case went down on a motion to dismiss on a summary judgment motion. And the plaintiff against whom attorney's fees was assessed was using that factor to say no attorney's fees here. Because this case went down, no fuss, no muss. We backed off right away, et cetera. So now you're kind of asking for the reverse. Didn't this district court judge do exactly what plaintiffs would want a district court to do? Which is to bend over backwards if there really is some question, some doubt in his mind made upon representations by the plaintiff. That he would go forward and allow a jury trial and allow the evidence to go forward. And under your rule, if a district court would be compelled or feel compelled that he or she is always going to have to err on the side of going the other way. Because otherwise they're going to lose their discretion to do what they think is right in terms of attorney's fees. Well, and we do, Your Honor, see more and more cases where the plaintiff would rather have summary judgment granted against them. And be able to stipulate to a judgment and take an appeal to the federal circuit rather than go through. I think we've seen a lot of that now. And so I don't think it's always in the plaintiff's benefit to have that happen. But the law of this circuit is clear that denial of summary judgment on the very issue which is before the court is certainly a factor that the court should consider when it looks to determine whether there's been a case of discretion. This goes back to my point. I don't think it's fair. I mean, the court specifically considered your denial of summary judgment and responded to that argument. I think it also must have considered the other argument of unclean hands. And so it's hard for me to sit here and have you say that the court didn't consider it when, in fact, it's addressed and it's opinioned or the argument was raised to the court. So maybe the better thing would be to say that the district court should have analyzed it differently. Well, I do believe the district court should have analyzed it and put enough of a record in its decision in order to allow an appellate court to do a real review as to abuse of discretion. But there's not a word about the defendant's conduct in that. And while it's true that that point was made in the submission to oppose the attorney fee award, I do think it was an important enough factor. I don't think dismissing the conduct of the defendants throughout the litigation as trash talk was a sufficient analysis and reasoning to determine whether this was unclean hands. And with respect to the summary judgment, your point would be that any time there's a denial of summary judgment, a court could not later award attorney fees? No, I don't take that position. I do think it's a factor. I think this court should have the opportunity to read a well-reasoned decision, which addressed what the judge didn't do in that summary judgment decision. He made a statement that one person cannot perform all the steps of the method, but then he did not address any of the reasons or issues. Why isn't providing the software to the cell phone by invitation? Why isn't that sufficient in light of the fact that there was no claim construction on the word providing, that the expert for the plaintiff testified that that was providing? So in light of that record, which is part of not only the summary judgment record, but the trial record, why didn't the court discuss that and then reason why that wasn't a step that could be performed by one user? That's my only point. Okay. We're beyond our time. We'll restore two minutes of rebuttal. Let's hear from the other side. Thank you. Thank you very much. May it please the court. I'm Daniel Green, counsel for Light 360. I'd like to just invite the court to ask any questions beyond this, but I'd like to focus on what my opposing counsel has said. First and foremost, I believe Judge Wallach said it correctly, that the comment early on that this was not believed to be an exceptional case at the time, based on what the district court knew, is thinking out loud. The district court clearly learned a great deal about the case and the merits as the court... I wanted to address the point about unclean hands or so-called expanded litigation misconduct. Why isn't that at least relevant to the inquiry? I mean, this is stuff that nobody's denying. This is part and parcel. All of this happened only and exclusively in the context of the litigation of this patent claim. So why isn't that conduct relevant to the assessment here? Well, I think the first answer, and we can almost stop there, is that octane fitness limits the discussion to the strength of the party's litigating positions and the conduct by the parties in the litigation. I think if we do open the door to conduct the parties engage in that goes well beyond what takes place in the courtroom or related to what's happening in the courtroom is something that simply isn't part of what octane fitness... How is it not related to what was happening in the courtroom? Excuse me? How is that conduct not related to what was happening in the courtroom when it involved the patent itself and the allegations that were being made in the courtroom? Well, it was not related to any action that was required by Life 360 or by AGIS to take with respect to the case as it was proceeding. This was simply Life 360 reacting very strongly to a case that it felt was abusive, bullying, and meritless. And Life 360 was told by two different law firms, the jury agreed it was meritless and the judge agreed it was meritless. So for Life 360 to go out, try to rally some public support against what it saw as a patent... I don't understand this. Isn't it correct that the district court here and other district courts have relied on the notion, the motivation for bringing the suit, which is to just extract settlement litigation costs, right? I mean, that's a factor that's considered. Well, that's all stuff that's outside of what's going on in the courtroom too. So how is that probative of the attorney's fees criteria and not the stuff on the other side? Well, I think in terms of, because it directly relates to why the claim is being brought against the defendant. So if the motivation for why this claim is being pursued is not for purposes of resolving a legitimate infringement pursuit, but appears designed to sort of force a defendant to abandon its good defenses and simply pay. I understand, not your case, but what about if a defendant outside of the litigation process sends letters out to customers or to competitors and says, we know we're infringing, but this guy never deserved his patent because he's undeserving of a patent, etc. So there's this outside communication that's used with other people on the outside. Would that be appropriate to use in the context of litigation misconduct? Well, I still think that's extrajudicial. Well, why is that? Isn't that closer to the other side motivation for why they're bringing the case? Well, no, because I don't think that's anything that's intended to directly affect what actually happens in the litigation. It's meant to rally some public support. Why? Maybe your client was acting because he was trying to subtly intimidate the other side and wanted them to back off and realize that their reputation would be at risk if they persisted in pursuing this claim. Well, certainly Legislative Safety did want the client to back off. And they were doing this as a motive. This was their motivation. So why isn't that as related to the litigation going on as the stuff on the other side? Well, I mean, I think the district court had the right attitude about it. It's just trash talking at some point. It's one thing if you're pursuing the claim in court for a particular reason, namely to subdue a client despite baseless claims that you're asserting. And it's another thing to, outside of the judicial context, to express yourself, express your views about the case, to complain about- Well, it may cross other lines, interference with potential advantage and so on. It may constitute a tort. Well, certainly not. And I think that's right. There are other rights and remedies at play if there was something in Life 360 that crossed other lines. But here, in terms of an exceptional case determination, we're looking at the case. This is the exceptional case, what's happening within the case. I don't think what Life 360 did with respect to commenting very loudly and very publicly about what it felt was an injustice is something that makes the case itself exceptional. I'm happy to answer further questions on that. There are some other issues I'd like to address. So one is, I've talked about how Life 360 felt this was bullying. The demand made of Life 360 did have an exceptionally short time frame, one that was not imposed on the much, much larger companies at play. This was a young startup just on the verge of making it. And at the same time, we have Aegis complaining of what it deemed irreparable harm from the outset of the lawsuit. That was never substantiated in the district court's view. There are no customers that overlap. There was no intent to seek the same customers and possibly have some sort of competitive relationship with the respective products. Until, that is, Aegis' product that had been supposedly in the works for a full decade magically gets launched the day before trial to sort of fabricate an appearance of competition. But it's not workable, as I recall the record. Well, it was said to have been available for download. That turned out not to be true either. At trial, that came out on cross-examination. So all of these things together, I think the district court was well within its discretion to make the judgment call that, hey, this doesn't really seem like, on top of the weakness of the claims themselves, this doesn't seem like Aegis is trying to press an infringement dispute because of this alleged irreparable harm and because there's actually infringement. This is just a straight-up question, which I don't know the answer to, which is, I thought, didn't the judge refuse to grant attorney's fees for an earlier point of time? And would that not have included, I guess my question is, so the attorney's fees you actually were awarded did not include, did they, the conduct and the litigation funds expended to defend against the preliminary injunction? Yes, that's right. So why would he do that? Well, I think it's, actually, I don't recall off the top of my head, I don't believe Aegis moved for a preliminary injunction. So there weren't any proceedings in that respect. It was simply a threat held over our head the entire time. A threat held over that wasn't really part of litigation then. Right, that wasn't really part of litigation, except that... And the court thought that was frivolous because of that. That's one thing, but why does the court get to assess threats that are made outside of the context of litigation, whereas your, what you term trash-talking, which I hate because it sounds like my kids and I don't have anything to do in the courtroom, but that's off the table. Well, I mean, the threat of the injunction was, it was in the complaint, it was never stricken from the complaint, so it was part of the case. We had to defend ourselves against it, we had to take discovery on it, we had to deal with it all the way through trial because Aegis maintained that it would be entitled to that relief if and when it was able to succeed on the merits. Oh, so you're talking about a permanent injunction now, not a preliminary injunction. Right, right. But the threat of any injunction, having been made many times throughout the course of this litigation, was something that we were stuck having to deal with and defend against from the outset. So I think it's very much part of the case whether they chose to move for a preliminary injunction or not. Did you assert Rule 11 in this as well? No, we did not file any Rule 11 motions. There were some correspondence where we, in order to force Aegis to drop some claims, particularly the ones that this court invalidated for indefiniteness on appeal last year, we sent some letters to that effect, but there was no motion. I should think that the harm claim, the harm element of the preliminary injunction, which the court found had no basis, would have drawn a... Well, we certainly could have. Part of the problem with a claim of injunctive relief is that it requires a lot of information about the market and about the company's businesses. That's information that you don't have access to until usually later in the case through discovery. So by the time we'd had all of that information... And the plaintiff has information about what its irreparable harm it thinks is before it files the action. That's counsel's duty. Yes, I agree, and certainly there could have been a pre-filing investigation defect here, and I wouldn't be surprised given the way things turned out if that was the case. We did not move for Rule 11 sanctions on that basis, so I can't say much more about that. I do want to comment briefly on the summary judgment issue and the fact that the district court at the time of summary judgment declined to grant our motion. We don't think that's any safe harbor for AGIS. We think that the district court clearly was relying, trying to give the benefit of the doubt to AGIS, the suggestion that once the invitation is sent, a number of steps, if the invitation is accepted, would occur automatically. There's a reason that that argument was no longer made at trial, because we proved it to be conclusively false. There are many, many steps that have to be performed by each individual user on each individual phone in order for any infringement to occur. So the mere idea that a single user had so much control over all the other users' phones and their actions, we think was exceptionally weak, and the district court was entitled to... Do you think, I mean, the district court seemed to suggest, I think, as I recall in his analysis, that it went to the jury if the jury said no infringement, but even if the jury had gone the other way, the judge would have struck that, right? I think that's right. That's how I understand it. But wouldn't this be a different case if the jury had gone the other way? I mean, wouldn't your hurdles be a bit higher if the jury sat there and listened to all the evidence and they concluded there was infringement? That would be a bit of a different case, would it not? It would be a different case, but if there is no evidence from which that jury could have reasonably reached that conclusion, I don't think that should prevent the district court from determining that the arguments were exceptionally weak. I mean, that's why we have Rule 50B, to correct for those mistakes, those clear, obvious mistakes that the jury made, where perhaps for reasons other than the evidence, they reached a conclusion that's manifestly wrong. Was the evidence that was considered by the court in responding to the summary judgment, was the evidence later at trial that was presented on the issue, was it stronger? Did you have additional evidence that you presented on why there was no infringement? Well, there certainly was more evidence after summary judgment, but that's largely with respect to issues that we did not move for summary judgment on. We decided to strategically focus on the biggest issues that covered the most claims. So there were additional things like the public-private network, common interest network. Those were not the subject of our summary judgment motions. There was a lot more non-infringement evidence put on later. But even as to the sort of divided problem that they have with these claims requiring actions on each phone, there was more that came out during trial. And part of that, or I should say a large part of that, is because Aegis' story continued to shift and evolve. It was unclear exactly what their theory was going to be. Is it a single user or does it have to be an administrative user? Are they calling a family somehow, an unincorporated association? So we had to defend against all of those moving targets all at once. But the core issue that was on display at summary judgment, namely whether the sending of a link, the mere sending of a link, somehow causes these things to happen automatically, the evidence that we had at the time was the same in essence. It was just not something that any one user could control. And we got the admissions that we needed from their expert at trial, but there were independent steps that had to be taken by those recipients of the invitation. If the court has no further questions, we would just ask that the judgment be affirmed. Your Honor, just a few points I would like to make. The comments which are true that this was a young man in a young company, well not so young. It was in business for six years. It started operations in 2008. He was also represented by a very competent patent counsel who was aware of everything that was going on with this campaign. And as I said, it wasn't just an extrajudicial campaign if you want to look at it like that. I do believe it was intricately related to litigation and the threats to the lawyers, not even the company, we're not talking about the threats to ages, to threaten the Kenyan law firm and each of the attorneys including associates with websites posting bad information about them. And then writing that law firm and saying, I'll give you a graceful exit, but if you don't drop this case, I'm going to elevate this conduct. How can that not be related to litigation? I agree completely with the court that if a demand letter without a sufficient amount of days to respond to it is something the court can consider in a fee award, then certainly the court can consider this conduct. And I think that's very important. I do think it's also important and it came up during this last few minutes. How do you find it telling that you feel obligated to distance yourself from prior counsel? No, I do believe that I would not have put everything into the briefs the way they wrote them. And I think some of the statements, I think they made some leaps of faith in making certain comments. That's a nice way of putting it. But I do believe that the result was wrong. I do believe there's sufficient record evidence. But I'm not quite sure what we do with that. I mean, I can't remember this kind of thing happening. We get the briefs, we spend hours and hours and hours reading them one, two, and three times. And that's largely the basis upon which we reach our conclusions. And then we get you all up here for 30 minutes, 15 minutes on the side. So you generically have suggested some of the stuff in the brief may be a leap of faith. Some of it may be not so kosher or tenuous to the record. We don't know what that is. So we're coming out of here listening to you for 15 minutes. And with briefs, which we're supposed to take as being the argument of your client. And I don't quite know what to do with that when we're evaluating the case when we go into the back room. Well, I certainly don't disagree. I mean, there's record citations and record evidence. And I don't believe they made any false submission of the record or said anything that was in the record which wasn't in the record. I would have certainly had a different tone. I would have written in a different way. And they're the ones who took it from day one all the way through trial. So they did what they thought was appropriate. I think very important, Your Honor, something that came up at the end there. They didn't even move for summary judgment on many of these claims and on many of these patents. They didn't even think their own evidence was strong enough on the public versus private, on the common and shared interest. They didn't even make a motion. They also, in all of the smear campaign where they attacked only one thing, the validity. They were challenging the validity that this was a troll. They didn't bring an IPR. They didn't take any of the actions that people normally take if they believe that the patent is so blatantly invalid. This is an exceptional case appeal. And I think, therefore, it's got to be an exceptional case. And I think this one stands apart from those that this court affirms. Because the reasoning wasn't there, the logic, the support by the district court, why these claim terms, given their plain and ordinary meaning, didn't satisfy the divided infringement rule. All of those questions are left for us. This is not aimed at you or at your firm. But it's difficult for you to assume the garb of a leper and then point it across the room and say unclean hands. Well, that part of the record, I think, Your Honor, is just extremely, I mean, all of the communications, all of the websites, all of the conduct, everything that happened is not even disputed. It's not disputed. So I think on that point, my question is, should the district court have considered that? He clearly didn't consider that conduct. Should he have considered it, number one? Should he have rejected it or accepted it? None of that, I think there's a lot left out of the 13-line comments by the district judge on why this case was being awarded fees. Okay, thank you. We thank both sides of the case to submit.